*663 [This Petition for a Reheaving was- accidentally pretermitted. It was misplaced, not being wil.li the Opinion of’the Court, but filed according to the date when overruled. The Reporter, not considering himself at liberty to pass it over, has published it, hoping that those concerned will not sup* pose he intended either neglect or slight. The opinion is to be found at page 410.]
In the case of Fightmaster et al. vs. Beasley, the counsel for the plaintiff in error, filed the following petition for a re-hearing, which was overruled.
The counsel for the plaintiff in error has not understood the record of this case as the court has stated it, and, therefore, a re-hearing is moved.
It was supposed to be material, that the defendant had not purchased the slave in question, at a sheriff’s sale, under an execution against the assets in the hands of Samuel Rowsee, as administrator of William Rowsee, deceased; but the purchase was made, if at all, under an execution against Samuel Row-see’s own estate.
This is the record. A judgment.was recovered ■against. Samuel Rowsee, as administrator of William Wooldridge, to he levied of the assests, and on that, an execution did issue against the assets, but that execution was replevied, and a bond given and returned. On this bond, in which Rowsee was individually bound, a fieri facias issued, commanding the sheriff, “ that of the estate of Samuel Rowsee, administrator of William Wooldridge and Thomas Smith, you cause to he made the sum of one hundred and forty dollars” &c. See the transcript of the record, page 16 to 31 inclusive. On this execution, the sheriff had the right to seize the individual property of Rowsee most undoubtedly; and he could uot have had the right to seize and sell the goods or chattels of the intestate in the hands of the administrator unless he had the right t-o levy *664 upon either, wiiich fie certainly had not. It was, therefore, supposed tiiat the defendant derived no title whatever to the slave by the sheriff’s sale under the execution, according to the plaintiff’s evidence, nor according to the record evidence given by the defendant. If the defendant bad any title by his purchase, it can only be made out by the parol evidence of the defendant, which he gave, conducing to prove that Samuel Rowsee had himself, whilst he had the right to do so. given up the slave to the sheriff to be sold, and stood by at the sale, so as to make the sale, in legal effect, his own sale.
The court has not distinguished between the plaintiff’s and defendant’s evidence, in the statement of the case, in the opinion delivered. The plaintiffs did not prove that the defendant had purchased the slave, at the sheriff’s sale, under an execution against the assets in the hands of Samuel Rowsee, as administrator of William Wooldridge, nor against the estate of Samuel Rowsee himself, nor-offer evidence conducing to prove such fact. The plaintiff’s evidence consisted of the will of William Rowsee the elder, the deposition of Phebe Rowsee, found in the transcript on page 51 to 63, and the evidence of Merritt Rowsee on page 101 and 101. Merritt Row-see says nothing of the sheriff’s sale, and ail Phebe Rowsee says is merely by way of accounting for her going to the house of the defendant and making a demand on behalf of the plaintiffs, and the conversation then had with him, which the plaintiff gave in evidence, to prove the conversion of the property. These are her words on this subject. She was asked by tiie plaintiff this question. “ How did Royal come into the possession of the defendant, Beasley?” And she gave this answer. “ Samuel Rowsee came near to Westport and requested me to let Royal fco up with him to New-Castle to see his (Royal’s) grandmother, and I consented for him to take him along. Some time afterwards, I heard he was sold by the sheriff.”
She was then asked this question. “ State whether you ever, as guardian of the children, or in their behalf, applied to the defendant, Beasley, for *665 the said boy, Royal, and what was his answer &c.” To which she answered. “ Hearing of the purchase of the boy by Beasley, I went out to see him, and aslted him if he would part with him ; and he answered that he would not, that he had purchased him for his own use. I was much dissatisfied when I heard of the sale in consequence of his being a family negro. This was a few weeks after the sale.” See page 54 and 55 of the record.
The above is all that is to be found in the plaintiff’s evidence in relation to the sale. What the witness says is mere inducement to the material facts. She states and she speaks only of hearsay. And besides, nothing is said by her to prove how the sheriff had sold the slave, under what process, or by what authority, and certainly nothing from -which the jury were bound to infer that the sale had been made under the execution the defendant afterwards produced, or by the authority of Samuel Rowsee os any one else having any right
The evidence of the sheriff’s sale all came from the defendant. It consisted of the record of the judgment, execution upon it, the replevin bond, execution thereon, and sheriff’s return in the case of a creditor of the intestate, Wooldridge, against Samuel Rowsee — (from which it could not appear what property was sold by the sheriff) — and of the testimony of witnesses in which there is some discrepancy; and which, fiowever consistent, did net conclude the plaintiffs.
This particularity is observed in the statement, for the purpose of shewing to this court, that, in deciding upon the most important instructions given to the jury by the circuit court, the evidence given by the defendant cannot be brought into view at all. In other words, the object is to clear the case of the title set up by the defendant, and attempted to be proved by his testimony, whilst those instructions of the circuit court, which were, in effect, directions to the jury, as in the case of a non suit, are considered. And this being accomplished, it is respectfully suggested, that it will manifestly appear on the face of the opinion delivered by this court, that an important position, on which the decision is *666 founded, is not supported by the record. The decisión is, that the circuit court did right in directing the jury, in substance, to find for the defendant, because it appeared that he, the defendant, did own at ^east one third part of the slave by his purchase at the sheriff’s sale, and was, therefore, to make the. best of the plaintiffs’ case, a tenant in common with them.
It is not now necessary to discuss the evidence, given by the defendant, to prove this interest in the property. It is certainly clear, that that question depends upon matters of fact deposed to by defendant’s witnesses, to make the best of the defendant’s case; and no authority can be .required to prove, that the court cannot assume such matters of fact, and give to the jury a peremptory instruction to find for'the defendant, whatever opinion the judge may entertain of the fulness of the evidence. The jury have the right to judge of at least the credit of the witnesses ; and it is manifest, defendant’s case was .not made out by his witnesses.
But for the purpose of shewing that the plaintiffs were entitled to have their case at least submitted to the jury, on their evidence, a farther statement fvill be made from the record.
'Here the will of Rowsee, the elder, will not be relied upon to prove title to all the interest in the slave.
William Wooldridge and his wife, with their dhildren, the plaintiffs, moved to Kentucky in May, 1811 — (seethe52ml pageofthe record — and brought with them the slave Royal, and others, claiming him not as his own property, but as having been loaned to him by his father-in-law, Rowsee, the elder — See same page, 52. Rowsee, the elder, died in Virginia prior to August, 1811 — See the probate of his will in that month, page 13, and Phebe Rowsec’s testimony, page 53. After this time, William Wooldridge field and claimed the slave in question, not as his property, but as the property of his children., the plaintiffs — See page 54 This he did both before and after the death of his wife. Mrs. Wooldridge died about two months after the removal to Kentucky, say in the summer of 1813. — Seepage 54. Wm. Wooldridge died about 18 months afterwards, *667 in the fall of 1814 — See{>age 37. After that time, Phebe Rowsee, the maternal aunt of the children, kept the slave in qne>tion in her possession as the property oí the piamtiffs. Samuel Rowsee never had tite slave in ¡.if pofsession, nor diet he ever lay claim to him as aaministrator or otherwise — See page 54. Phehe Rowsee lived on the farm where the piawtiftV’ mother resided, kept the children, the plaintiff* in this suit,together, and had the slave Royal in their possession — See page 39. And whilst the slave was thus held, he was sent to the house of Samuel Rowsee to see his (the boy’s) grandmother. And tiu: next we he.tr of him is in the possession of the defendant, claiming him- under the alleged purchase —See page 54, 55. Now, on this state of case, it is. insisted that the plaiulifis shewed title, j>rima faeie¿ to at least some interest in the slave.
The court have said that the will vested the entire right to the slave either in Mrs. Wooldridge for life, or in the residuary devisees, Samuel Rowsee, .Mrs. Wooldridge and Phebe Rowsee, after her death, or in these residuary' devisees in the first instance. In either of these cases, the residuary devisees became entitled, after the death of nrs. Wooldridge, in 1813, to the whole estate. Samuel Rowsee became entitled in his own right to one third, and as administrator to another third, and Phebe Rowsee to the remaining third. Rut Samuel Rowsee set up no claim hi either right, neither in his individual nor fiduciary. Rut tlie slave remained in the possession of William Wooldridge,holding and claiming, as natural guardian to his children, during his life ; and after his death passed to Phebe Rowsee, the other devisee. She held, claiming as-the volunteer o-uardian of the plaintiffs. And thus the property remained until the defendant got possession, according to the plaintiffs’ evidence, without any right whatever. The court is not understood as having decided that the jury would not have been authorized to infer, from the plaintiffs’ evidence, that tiiey were entitled to the interest of Phebe Rowsee, their volunteer guardian, who thus took the possession for theiii, and deposed to their possession and right in court. And believing it is impossible that this *668 evidence could be withheld from a jury, the point will not be dwelt upon. It does seem, also, to be very plain that the jury would have been authorized to infer a right in the plaintiffs to the share of Wm. Wooldridge. He had always, from 1811.declar-ed he held the slave as the property of his children, and not as his own. Samuel Rowsee had never set up any claim whatever to the property in either of his characters. The case then, stood precisely, on the plaintiffs’ evidence, as it did when it was heretofore before this court, on the appeal from the Henry circuit court. — See the opinion, as reported in Monroe, and the bill of exceptions in the old record, herewith furnished. The court then decided that the court below erred in the instructions to find as in case of a non suit.
No better right now appears than did then. And this court then decided that the case ought to have been left to the jury, no matter what was the construction of the will. The possession that was then proved, is the same that appears in this record.
The court have said, in the late opinion, that it Was not disposed to think the plaintiffs were in the actual possession of the slave, but certainly that was a question of fact, and it is confidently believed that no jury could have hesitated to find it, on the piamtiff’s evidence, for them. And it must not be forgotten that that alone is to be considered in this discussion.
Certainly the person in possession of a slave, and claiming the right to it,does not lose that possession by allowing it to visit its kindred, even if it does go in company with the better owner, unless such owner assumed some exercise of ownership or control over the property ; and the plaintiffs, in this case, gave no evidence conducing, in any degree, to prove any such fact. The plaintiffs, then, had possession, as-the jury might have found ; and for this cause, and by the acquiesence, acts and declarations of those who may have been once the owners, the plaintiffs had the right of property, prima facie, at least. Indeed, the court is understood as conceding to the plaintiffs a right of action, prima facie, but the opin *669 ion then proceeds to determine that it was not maintainable against the defendant because he w-as a bona fide purchaser for at least one third of the interest. This was certainly approving an instruction to the jury to find as in case of a non suit, because it seemed to the court the defendant’s evidence proved facts sufficient to obviate the plaintiff's proofs.
It is stated in the opinion, as a part of the case, that the sheriff levied the execution on the slave as ■assets in the hands of the administrator, in whose hands he was, in consequence of his request to that effect, at his own house on a visit, and the defendant bought him &c. And the sheriff does state, in his return, that the slave was given up to be sold by the administrator. But this return, read by the defendant, was not conclusive on the plaintiff, who was no party to the record. See Caldwell vs. Harlam, III Monroe, 351. And the plaintiff did offer to prove by Rowsee, said to be the administrator, that he had not sold the slave to the defendant, nor any one else, which he certainly had done, in contemplation of law, if he had given him up to the sheriff, ■and he had sold him accordingly. But the court overruled this evidence, and decided that it could not be given, “ because it would be a contradiction of the record, read in evidence, by the defendant.” See page 90. The circuit court, in effect, decided, that the defendant’s proofs of title were incontrovertible, and that the plaintiffs had none, no matter where the slave was born, and no odds whether he passed by the will or not.
These are the instructions moved by the plaintiff, all of which were overruled :
“ 1, That the slave, in the declaration mentioned, passed by the last will and testament of Samuel Rowsee, deceased, and the assent and confirmation of his executrix, Elizabeth Rowsee, in the year 1812 or 1813, as stated by the witness, Merritt Row'see.
2. That whether, by the letter of the will, the title passed to the plaintiff or not, no title whatever passed by the will, or otherwise, to the administrator of William Wooldridge, unless it is proved to fhe jury that the testator, Rowsee, did, in his life *670 time, make an absolute donation of said slave to said tt ooldridge.
3. That, unless the said William Rowsee, deceased, did make an absolute gift of said slave to the said Wooldridge, the said sheriff had no right whatever to levy said executions on said slave, either with or without the consent of the said Samuel Rowsee, and the defendant acquired no title by his alleged purchase.
4. That the slave, in the declaration mentioned, was not subject to sale under the executions under which it is alleged he was sold, and purchased by the defendant.
5. That the possession of the said slave, by Wooldridge, after his wife’s dentil, and of Phebe. Rowsee, after Mrs. Wooldridge’s death, claimed as the guardian of the children of said Wooldridge and wife, was, in law, the possession of said children, and not such as to subject said slave to the payment of the debts of said Wooldridge.
That, if Samuel Rowsee did consent to the Phebe Rowsee, the assumed guardian of the said children of William Wooldridge, deceased, taking and holding the slave in question as the property of the said children, and she did so hold and possess the.m, the said Rowsee had no right, even-if the said slave did belong to said Wooldridge at his death, to authorize the sheriff to seize and sell said slave under said executions, and the defendant had no right by his said alleged purchase.
if the jury believe the slave in question was loaned by said William Rowsee, and not given said Wooldridge, the defendant had no right to said slave.
If the slave in question was the property of William Rowsee at his death, that the defendant was a man wronged without title, and the jury have a right to presume title in the plaintiffs, from all the circumstances of the case, whether they derive title under the will or not.
That the plaintiffs have shewn, by the facts and circumstances oí the case, the length of ppssession, and manner of holding, the right to recover, if the jury believe the testimony.
*671 . That the defendant’s testimony constitutes no defence to this action.
If the jury believe the whole of the evidence in the case, the verdict ought to be for the plaintiffs.”
And the court, on the defendant’s motion, instructed the jury as follows :
“ 1. That, according to the will of Won. Rowsee, deceased, none of the children of negro woman, Hannah, the mother of Royal, born before the date of said will, passed, in life estate, to Mrs. Wooldridge, with remainder to her children.
2. That no particular estate for life, with remain,der over in slaves, can be created as of legal effect, so as to vest an estate therein in remainder, except the same he made by deed or last will in writing.
3. That if they believe, from the evidence, that »o estate vested in the plaintiffs in virtue of the will of William Rowsee, deceased, and that William Wooldridge, their father, died possessing the slave, and that his administrator, legally qualified as such, afterwards delivered him up to the sheriff to be sold in satisfaction of debts due from said Wooldridge in his life time, and that at such sale so made by the sheriff, he was purchased by the defendant, then that they shall find for the defendant in this action.
4. That if they believe, from the evidence, that no estate yested in the plaintiffs in virtue of the will of William Rowsee, deceased, and that William Wooldridge, their father, died possessing the slave, and that his administrator, legally qualified and acting as such, delivered hint up to be sold hv the sheriff in satisfaction of the executions in the records set out, marked A and B, and that at such sale so made by the sheriff under said executions., he was purchased by the defendant, then that they' find for defendant in this action.
5. That Ihenegro boy, Royal, not being specially devised by William Rowsee, passed to his residuary devisees, and Mrs. Wooldridge being one, and living at the death of her father, her interest in the said hoy, Royal, then in the possession of her husband, was. absolutely vested in him.
*672 The plaintiff objected, the court overruled all the instructions moved by the plaintiffs, and refused to give any of them, and gave all the instructions moved by the defendants : and further instructed the-jury — that, if the slave in question was born before the date of W.illiam Rowsee’s will, the plaintiff had shewed no cause of action, and the law was, the verdict ought to be for the defendant i and, also — that if the boy. Royal, was born after the date of the said will, and the jury believed the defendant had purchased him at the sheriff’s sale, and that the said Rowsee had given up the boy to be sold under the execution, the plaintiffs could not recover.”
It is earnestly insisted, that the jury ought to have been allowed to presume the assent of Rowsee, as the administrator, to the taking and holding of the slaves by the plaintiffs as their own property ; after which, he certainly had no right to reclaim. And the jury ought, also, to have been allowed to presume an extinguishment pf the claims of the other parties, in any they had, But nothing was left to the jury — not even the question of the identity of the slave sold by the sheriff, and that sued for by the plaintiffs.
But this petition is too long. Perhaps it might have been sufficient to have said, that the court had not distinguished between the plaintiffs’ and defendant’s evidence in the statement of the case on which the instructions of the circuit court were predicated» This, it is respectfully suggested, opens the error which has occurred. The re-hearing is moved under a sense of duty the counsel feels to do all in his power to obtain a decision of his client’s case according to the laws of the land.